UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FABIAN ALEXANDER ALVARENGA MATUTE,<br><br>Petitioner,<br><br>v.<br><br>MINGA WOFFORD, Mesa Verde ICE Processing Center Facility Administrator; JOHNNY J. BAILEY, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office; TODD LYONS, Acting Director of United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the United States Department of Homeland Security; PAMELA BONDI, Attorney General of the United States,<br><br>Respondents. | No. 1:25-cv-01206-KES-SKO (HC)<br><br>ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER<br><br>Doc. 7 |

Petitioner Fabian Alexander Alvarenga Matute is a 40-year-old asylum seeker from Honduras who entered the United States in 2024. After entry, he was briefly detained by immigration officials but then released after the officials determined that he was neither a danger nor a flight risk. On September 9, 2025, Immigration and Customs Enforcement ("ICE") agents re-detained him at a scheduled check-in.

Petitioner filed a petition for writ of habeas corpus on September 15, 2025, Doc. 2, and a motion for temporary restraining order on September 17, 2025, Doc. 7, arguing that he was entitled to a pre-deprivation bond hearing under the Due Process Clause and that the Court should

1

1  order his immediate release pending any such hearing. The Court ordered respondents to file an
2  opposition by September 24, 2025. Doc. 10. Respondents untimely filed an opposition on
3  September 25, 2025. Doc. 11. Petitioner filed a reply on September 26, 2025. Doc. 13. For the
4  reasons set forth below, petitioner's motion for temporary restraining order is granted.

5  **I.      Background**

6  Petitioner is a 40-year-old asylum seeker from Honduras. *See* Doc. 2 at ¶ 1; Doc. 11-1,
7  Martinez Decl. at ¶ 5. Petitioner was previously removed twice in 2001 upon attempting to enter
8  the United States. Doc. 11-1, Martinez Decl. at ¶ 5. Petitioner subsequently re-entered in 2001
9  and remained in the United States until 2007. *Id.* The government indicates that, in 2005,
10 petitioner was convicted of one count of hindering apprehension or prosecution in New Jersey for
11 giving false information to a law enforcement officer. Doc. 11-1, Martinez Decl. at ¶ 6; Doc. 11-
12 1, Ex. 5. In 2007, petitioner was removed from the United States. *See id.* ¶ 7; Doc. 11-1, Ex. 4 at
13 23.

14 In 2024, petitioner fled Honduras because he faced violence and death threats. Doc. 2 at
15 ¶ 40. He scheduled an appointment with immigration officials at a port of entry through a phone
16 application called CBP One. *Id.* at ¶ 41; *see CBP One Fact Sheet*, U.S. Customs and Border
17 Protection, https://www.cbp.gov/sites/default/files/assets/documents/2023-
18 Jan/CBP%20One%20Fact%20Sheet_English_3.pdf. He arrived for his appointment on
19 September 4, 2024 at the San Ysidro, California port of entry. Doc. 2 at ¶¶ 11, 41; Doc. 11-1,
20 Martinez Decl. at ¶ 9. At the appointment, immigration officials placed him in removal
21 proceedings and released him on his own recognizance pursuant to 8 U.S.C. § 1226 pending those
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

2

proceedings.[1] *See id.*; Doc. 11-1, Ex. 3 (record of deportable/inadmissible alien); Doc. 11-1, Ex. 2 (notice to appear); Doc. 13 at 11–12 (order of release on recognizance).

The regulations that authorize immigration authorities to release a noncitizen on his own recognizance require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Since his release, petitioner has lived with his wife in California. Doc. 7-1 at 9–10; Doc. 13-1, Second Suazo Decl. at ¶¶ 2–3, 11. His wife suffers from fibromyalgia, psoriasis, and high blood pressure. *See id.*; Doc. 7-3, Suazo Decl. at ¶¶ 1–3; Doc. 13-1, Second Suazo Decl. at ¶¶ 12–14. Petitioner is her sole caretaker, and she relies on him to administer her medicine and assist her with daily tasks. Doc. 7-3, Suazo Decl. at ¶¶ 1–3; Doc. 13-1, Second Suazo Decl. at ¶¶ 9–14. He also financially supports his wife. Doc. 7-1 at 8–10; Doc. 13-1, Second Suazo Decl. at ¶¶ 10. Petitioner also lost his employment after ICE detained him on September 9, 2025. Doc. 13-1, Second Suazo Decl. at ¶ 15. Petitioner has pursued relief in his removal proceedings by filing an application for asylum and withholding of removal under the Convention Against Torture. Doc. 2 at ¶ 42. The government's records indicate that petitioner has not been arrested

---

[1] The declaration of Deportation Officer Daniel Martinez states that petitioner was "paroled" by immigration officials on September 4, 2024. Doc. 11-1, Martinez Decl. at ¶ 9. The government argues that this means petitioner was initially detained pursuant to 8 U.S.C. § 1225(b) and was released on parole pursuant to 8 U.S.C. § 1182(d)(5)(A). Doc. 11 at 8. However, the government's argument is contradicted by petitioner's order of release on recognizance, which states that "[i]n accordance with section 236 of the Immigration and Nationality Act [8 U.S.C. § 1226] . . ., you are being released on your own recognizance . . . ." Doc. 13 at 11. Additionally, "parole" may also refer to "conditional parole" authority under 8 U.S.C. § 1226(a). *See* 8 U.S.C. § 1226(a) (stating that a noncitizen may be released on "bond" or "conditional parole"). Conditional parole under § 1226(a) and parole under § 1182(d)(5)(A) are distinct procedures that apply to different groups of noncitizens. *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115–16, 1119–20 (9th Cir. 2007); *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2675785, at *6 (E.D. Cal. Sept. 18, 2025) (explaining that conditional parole under § 1226(a) and parole under § 1182(d)(5)(A) "are distinct procedures").

1  or charged with any crime since his release by immigration authorities in September 2024.  Doc.
2  11-1, Ex. 5.

3  Upon being released by immigration officials in September 2024, petitioner was placed in
4  the Alternatives to Detention Program.  Doc. 2 at ¶ 11; Doc. 11-1, Martinez Decl. at ¶ 10.  He was
5  initially required to wear a tracker in the form of a watch.  Doc. 2 at ¶ 44; Doc. 13-1, Second
6  Suazo Decl. at ¶ 4.  Later that year, immigration officials removed the watch and required
7  petitioner to check in periodically through a phone application.  Doc. 2 at ¶ 44; Doc. 13-1, Second
8  Suazo Decl. at ¶ 5.  Respondents assert that petitioner missed three check-in appointments
9  through the application: on January 25, 2025, April 28, 2025, and August 11, 2025.  Doc. 11-1,
10 Martinez Decl. at ¶ 10.  Petitioner indicates that he completed all virtual and in-person check ins,
11 but that, during some attempts to check in, the phone application did not work properly and he
12 completed the check-in late.  Doc. 2 at ¶ 44; Doc. 13-1, Second Suazo Decl. at ¶¶ 6–7.  After his
13 last attempt to check in, he was instructed to appear at the San Francisco ICE office in person.
14 Doc. 2 at ¶ 44; Doc. 13-1, Second Suazo Decl. at ¶ 8.  On September 9, 2025, petitioner appeared
15 at the San Francisco ICE office as instructed, and ICE agents arrested him.  Doc. 2 at ¶ 45; Doc.
16 11-1, Martinez Decl. at ¶ 11.  Petitioner's attorney asserts that a deportation officer told her that
17 petitioner was being arrested for three check-in violations that involved checking-in but doing so
18 after the allotted time.  Doc. 2 at ¶ 45.

19 ICE transferred petitioner to Mesa Verde ICE Processing Center, where he remains
20 detained.  *Id.* ¶ 46; Doc. 11-1, Martinez Decl. at ¶ 11.

21 **II.     Legal Standard**

22 The standards for issuing a temporary restraining order and a preliminary injunction are
23 "substantially identical."  *See Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.,* 240 F.3d 832, 839
24 n.7 (9th Cir. 2001).  "A preliminary injunction is an extraordinary remedy never awarded as of
25 right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553
26 U.S. 674, 689–90 (2008)).  "A plaintiff seeking a preliminary injunction must establish that he is
27 likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of
28 preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the

4

public interest." *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)). "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

### III.   Discussion

#### a.   Petitioner is Likely to Succeed on the Merits

Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023); *see also Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). Petitioner asserts that he possesses a protected liberty interest under the Due Process Clause and that, under the factors outlined in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), he was entitled to a pre-deprivation bond hearing at which the government must prove that he is a flight risk or danger to the community. Doc. 7-1 at 13–16.

Respondents argue that petitioner is not entitled to the protections of the Due Process Clause, asserting that petitioner is an applicant for admission to the United States and "has only those rights regarding admission that Congress has provided by statute." Doc. 11 at 9 (quoting *DHS v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020)). Noting that Congress possesses "plenary power to make rules for the admission of" noncitizens, *id.* (quoting *Kleindienst v. Mandel*, 408

U.S. 753, 766 (1972), they argue that petitioner's "rights are limited to whatever statutory rights Congress provides."[2] *Id.*

Respondents' argument is unpersuasive. First, it fails to appreciate the distinction between persons already located inside the United States, like petitioner, and persons attempting to enter the United States, like the petitioner in *Thuraissigiam*. "It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citing *United States v. Verdugo–Urquidez,* 494 U.S. 259, 269 (1990); *Johnson v. Eisentrager,* 339 U.S. 763, 784 (1950)). "But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.*; *see Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority.").

Second, respondents' argument misconstrues the nature of the challenge that petitioner brings in this case, which is a challenge to his detention. *Thuraissigiam* held that a petitioner who was stopped at the border did not have any due process rights *regarding admission into* the United States. *Thuraissigiam*, 591 U.S. at 107. However, petitioner challenges his re-detention without a hearing; he does not challenge in this habeas action any determination regarding his admissibility. *See Padilla v. ICE*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023) (discussing *Thuraissigiam* and explaining the distinction between a challenge to admission and a challenge to detention); *Hernandez*, 872 F.3d at 981 ("[T]he government's discretion to [detain] non-citizens is always constrained by the requirements of due process.").

"Although the Supreme Court has described Congress's power over the 'policies and rules

---

[2] The record shows that, in September 2024, immigration officials released petitioner on his own recognizance under § 1226. *See* Doc. 13 at 11–12 (order of release on recognizance). Notwithstanding the fact that petitioner was released pursuant to § 1226 for over a year, respondents now assert that petitioner's detention is subject to 8 U.S.C. § 1225(b)(2) and that he is mandatorily detained pursuant to that statute. Doc. 9 at 7–8.

1  for exclusion of aliens' as 'plenary,' and held that this court must generally 'defer to Executive
2  and Legislative Branch decisionmaking in that area,' it is well-established that the Due Process
3  Clause stands as a significant constraint on the manner in which the political branches may
4  exercise their plenary authority"—through detention or otherwise. *Hernandez*, 872 F.3d at 990
5  n.17 (citing *Kleindienst*, 408 U.S. at 769; *Zadvydas*, 533 U.S. at 695). The Due Process Clause
6  protects petitioner, a person inside the United States, from unlawful detention. *See Zadvydas*, 533
7  U.S. at 693.[3]

Petitioner's Due Process challenge is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)). These two steps are examined in turn.

### 1. Petitioner Possesses a Protected Liberty Interest

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id.* (Due Process requires pre-deprivation hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of

---

[3] Respondents also argue that petitioner's motion goes beyond a request to preserve the status quo and instead inappropriately seeks "the ultimate relief he demands in this case," citing *Senate of Cal. v. Mosbacher*, 968 F.2d 974, 978 (9th Cir. 1992). Doc. 11 at 6–7. In *Mosbacher*, the trial court ordered as preliminary relief the release of data that the state sought to keep private, and once the data was released the state would "have lost the whole case for all practical purposes." *Mosbacher*, 968 F.2d at 978. In that context, the Court held that "judgment on the merits in the guise of preliminary relief is a highly inappropriate result." *Id.* But awarding temporary relief of the kind requested here does not constitute a final judgment on the merits in this case or foreclose further litigation of the issues raised in petitioner's habeas petition. *See Castellon v. Kaiser*, No. 1:25-cv-00968-JLT-EPG, 2025 WL 2373425, at *7 n.7 (E.D. Cal. Aug. 14, 2025) (rejecting similar government argument).

7

a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84. Petitioner's release on his own recognizance pending his immigration proceedings was similar. Among other things, it allowed him to live with, care for, and financially support his wife. Petitioner also pursued relief in his removal proceedings.[4]

The Court finds that petitioner has a protected liberty interest in his release. *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest). The Court must therefore determine what process is due before the government may terminate his liberty.

---

[4] Respondents assert that petitioner "failed to adhere to [the release] requirements," Doc. 11 at 8, while petitioner indicates that he complied with the release terms and appeared at all immigration check-ins as required, only checking in late once due to technical difficulties. It is not necessary to resolve this factual dispute in this action. The issue here is whether the Due Process Clause requires a hearing before a neutral arbiter who will determine whether there are any changed circumstances warranting petitioner's re-detention.

8

**2. A Pre-Deprivation Bond Hearing Is Required**

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation are evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

Turning to the first factor, petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Since immigration authorities released petitioner on his own recognizance in September 2024, petitioner lived with, cared for, and financially provided for his ill wife. His detention denies him that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla*, 704 F. Supp. 3d at 1172. Immigration officials' release of petitioner in 2024 reflected a determination that he did not pose a flight risk or danger to the community. *See Saravia*, 280 F. Supp. 3d at 1176. The government's records show that petitioner has not been arrested or cited for a crime since then. *See* Doc. 11-1, Ex. 5. Although respondents assert that petitioner "failed to adhere to [the release] requirements," Doc. 11 at 8, petitioner indicates that he complied with the release terms and appeared at all immigration check-ins as required, only checking in late

1   once due to technical difficulties.  No neutral arbiter has determined whether the facts show that
2   petitioner is a flight risk or danger to the community.  Given the absence of any procedural
3   safeguards to determine if his detention was justified, "the probable value of additional
4   procedural safeguards, i.e., a bond hearing, is high."  *A.E.*, 2025 WL 1424382, at *5.

5   Third, the government's interest in detaining petitioner without a hearing is "low."
6   *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, No. 2:25-cv-
7   00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025).  In immigration court,
8   custody hearings are routine and impose a "minimal" cost.  *Doe*, 2025 WL 691664, at *6.  "If the
9   government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward
10  doing so; but its interest in doing so without a hearing is low."  *Ortega*, 415 F. Supp. 3d at 970.

11  On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which
12  should have been provided before petitioner was detained.  "'[T]he root requirement' of the Due
13  Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived
14  of any significant protected interest.'"  *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542
15  (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127
16  ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some
17  kind of a hearing *before* the State deprives a person of liberty . . . .").  The Supreme Court has
18  held that Due Process requires a pre-deprivation hearing before those released on parole from a
19  criminal conviction can have their bond finally revoked.  *See Morrissey*, 408 U.S. at 480–86.  The
20  same is true for those subject to revocation of probation.  *Gagnon v. Scarpelli*, 411 U.S. at 782.
21  Numerous district courts have held that these principles extend to the context of immigration
22  detention.  *See, e.g.*, *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at
23  *4–6 (N.D. Cal. Aug. 21, 2025); *Garcia*, 2025 WL 1927596, at *5; *Pinchi v. Noem,* No. 25-CV-
24  05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025); *Ortega*, 415 F. Supp. 3d at
25  970; *Doe*, 2025 WL 691664, at *6; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2
26  (N.D. Cal. June 14, 2025); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4
27  (N.D. Cal. May 6, 2022); *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4
28  (N.D. Cal. Aug. 23, 2020).  Given the absence of "evidence of urgent concerns," the Court

concludes that "a *pre*-deprivation hearing [was] required to satisfy due process." *Guillermo M. R.*, 2025 WL 1983677, at *9.

With these considerations in mind, petitioner is likely to succeed on the merits.

### b. Petitioner Will Face Irreparable Harm Without Injunctive Relief

Turning to the second *Winters* factor, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."[5] *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). Additionally, as the Supreme Court has recognized, incarceration "has a detrimental impact on the individual" because "it often means loss of a job" and "disrupts family life." *Barker v. Wingo*, 407 U.S. 514, 532–33 (1972). Since being detained, petitioner has been unable to care for or support his ill wife and he lost his employment. Given these harms and the Court's conclusion that petitioner is likely to succeed on the merits of his claim that his detention without a bond hearing violates the Due Process Clause, petitioner faces irreparable harm absent a temporary restraining order.

### c. Balance of Equities and Public Interest

When the government is the nonmoving party, "the last two *Winter* factors merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted). Faced with a choice "between [minimally costly procedures] and preventable human suffering," as discussed above, the Court concludes "that the balance of hardships tips decidedly in [petitioner's] favor." *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

The public interest also weighs in petitioner's favor. "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has

---

[5] Respondents argue that this presumption does not apply when a petitioner fails to establish a likelihood of success on the merits, *see* Doc. 11 at 10–11, but as explained above, petitioner has shown a likelihood of success on his claim.

recognized that the costs to the public of immigration detention are staggering." *Diaz*, 2025 WL 1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (citing *Padilla*, 953 F.3d at 1147–48).

### d. Burden of Proof

Respondents argue that the burden of proof should fall on petitioner at the bond hearing. Doc. 11 at 11–12. The Court finds that in this context the burden is more appropriately placed on the government. *See Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1107 (W.D. Wash. 2019); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *8 (E.D. Cal. July 25, 2025).

In *Singh v. Holder*, the Ninth Circuit held, in the context of hearings provided for those detained under § 1226(c), that "the substantial liberty interest at stake" warranted placing the burden on the government to "prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond." *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1199 (9th Cir. 2022) (explaining that *Singh* was based on general principles of due process). "Because it is improper to ask the individual to 'share equally with society the risk of error when the possible injury to the individual'— deprivation of liberty—is so significant, a clear and convincing evidence standard of proof provides the appropriate level of procedural protection." *Id.* at 1203–04 (quoting *Addington v. Texas,* 441 U.S. 418, 427 (1979)). These same concerns are present here.

Following a line of cases which utilized the constitutional avoidance canon to read a bond hearing requirement into the statute, the Ninth Circuit extended the burden of proof principles from *Singh* to bond hearings for those detained under § 1225(b) and § 1231(a). *See Diouf v. Napolitano*, 634 F.3d 1081, 1082 (9th Cir. 2011); *Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) ("*Rodriguez*"). Although the Supreme Court subsequently held in *Jennings* that the constitutional avoidance canon could not be used to read a bond hearing requirement into the

12

1. statute, it did not address an as-applied constitutional due process challenge. *Jennings*, 583 U.S. at 304–06, 312 ("Because the Court of Appeals . . . had no occasion to consider respondents' constitutional arguments on their merits[,] . . . we do not reach those arguments."). *Singh* and *Rodriguez* "relied on the Due Process Clause in determining" who should bear the burden of proof at those bond hearings. *Rodriguez Diaz*, 53 F.4th at 1202; *see Singh*, 638 F.3d at 1203–06. The issue of the burden of proof at a hearing required by due process therefore appears to remain governed by *Rodriguez* and its extension of *Singh*'s requirements to bond hearings for § 1225(b) detainees. *See Maliwat v. Scott*, No. 2:25-CV-00788-TMC, 2025 WL 2256711, at *10 (W.D. Wash. Aug. 7, 2025) (applying *Singh* in § 1225(b) case); *Banda*, 385 F. Supp. 3d at 1107 (same); *Abdul-Samed*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *8 (same).

    Respondents point to *Rodriguez Diaz*, which held that § 1226(a), which places the burden of proof on the detainee at a bond hearing, was constitutionally adequate. *Rodriguez Diaz*, 53 F.4th at 1210. But "[s]ection 1226(a) offers substantial procedural protections to detained persons," *id.* at 1194, which cannot be said of § 1225(b)(2)(A), the provision under which the government maintains petitioner is now detained. In that regard, § 1225(b)(2)(A) is more like § 1226(c), as both mandate detention. Respondents also argue that *Zadvydas* placed the burden on the petitioner to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" before making "the government respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. But the cited portion of *Zadvydas* outlined the appropriate procedure to be used at a preliminary showing on a challenge to prolonged detention, not whether the burden of proof should fall on the detainee or the government at any bond hearing to determine whether the detainee was a flight risk or danger to the community. *See id.* The burden at that kind of hearing should fall on the government for the reasons outlined in *Singh*.

    **e. Remedy**

    In conclusion, the Court finds that the requirements for issuing a temporary restraining order are met. Petitioner's immediate release is required to return him to the status quo ante— "the last uncontested status which preceded the pending controversy." *Pinchi*, 2025 WL

1853763, at *3; *Kuzmenko v. Phillips*, No. 2:25-cv-00663-DJC-AC, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025); *see also Valdez v. Joyce*, 25 Civ. 4627, 2025 WL 1707737, at *5 (S.D.N.Y. June 18, 2025) (ordering immediate release of unlawfully detained noncitizen); *Ercelik v. Hyde*, No. 1:25-CV-11007-AK, 2025 WL 1361543, at *15–16 (D. Mass. May 8, 2025) (same); *Günaydın v. Trump*, No. 25-CV-01151, 2025 WL 1459154, at *10–11 (D. Minn. May 21, 2025) (same). Respondents are ordered to release petitioner immediately. Respondents may not re-detain petitioner unless the government proves by clear and convincing evidence at a bond hearing before a neutral decisionmaker that petitioner is a flight risk or danger to the community.

The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. [T]he party affected by the injunction [has the] obligation of presenting evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003). Respondents ask the Court to require that petitioner post security but do not explain how they risk harm without such a security bond. Doc. 11 at 11. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Garcia*, 2025 WL 1676855, at *3; *Pinchi*, 2025 WL 1853763, at *4.

**IV.     Conclusion and Order**

Accordingly, petitioner's motion for temporary restraining order, Doc. 7, is GRANTED. Respondents are ORDERED to release petitioner immediately. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

Respondents are ORDERED TO SHOW CAUSE before this Court why a preliminary injunction should not issue pending a final disposition of this matter. The hearing on the order to show cause will be held on October 17, 2025, at 1:30 p.m. in Courtroom 6.[6]  Respondents shall

---

[6] Counsel requesting to appear at the hearing by video appearance shall contact the courtroom deputy at least 24 hours prior to the hearing.

1  file any further response to petitioner's motion by October 10, 2025.  Petitioner may file a reply
2  by October 15, 2025.  The parties may stipulate to extend the briefing schedule and hearing date,
3  provided that this temporary restraining order will remain in effect pending any such continuance.

IT IS SO ORDERED.

    Dated:    October 2, 2025

UNITED STATES DISTRICT JUDGE