UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FABIAN ALEXANDER ALVARENGA MATUTE,<br><br>Petitioner,<br><br>v.<br><br>MINGA WOFFORD, Mesa Verde ICE Processing Center Facility Administrator; JOHNNY J. BAILEY, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office; TODD LYONS, Acting Director of United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the United States Department of Homeland Security; PAMELA BONDI, Attorney General of the United States,<br><br>Respondents. | No. 1:25-cv-01206-KES-SKO (HC)<br><br>ORDER DENYING MOTION TO DISMISS AND EXTENDING TEMPORARY RESTRAINING ORDER FOR THREE MONTHS<br><br>Docs. 7, 14, 15 |

This case concerns the detention of petitioner Fabian Alexander Alvarenga Matute, a 40-year-old asylum seeker from Honduras. This matter is before the Court on respondents' motion to dismiss the petition for writ of habeas corpus, Doc. 15, and the Court's order to show cause why a preliminary injunction should not issue, Doc. 14. For the reasons explained below, the Court denies the motion to dismiss, and for good cause shown, extends the temporary restraining order in effect for three months.

**I.    Background**

In 2024, petitioner fled Honduras because he faced violence and death threats. Doc. 2 at ¶ 40. He scheduled an appointment with immigration officials at a port of entry through a phone

1

application called CBP One. *Id.* at ¶ 41; *see CBP One Fact Sheet*, U.S. Customs and Border Protection, https://www.cbp.gov/sites/default/files/assets/documents/2023-Jan/CBP%20One%20Fact%20Sheet_English_3.pdf. He arrived for his appointment on September 4, 2024 at the San Ysidro, California port of entry. Doc. 2 at ¶¶ 11, 41; Doc. 11-1, Martinez Decl. at ¶ 9. At the appointment, immigration officials placed him in removal proceedings and released him on his own recognizance pursuant to 8 U.S.C. § 1226 pending those proceedings. *See id.*; Doc. 11-1, Ex. 3 (record of deportable/inadmissible alien); Doc. 11-1, Ex. 2 (notice to appear); Doc. 13 at 11–12 (order of release on recognizance).

The regulations that authorize immigration authorities to release a noncitizen on his own recognizance require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Following his release in 2024, petitioner lived with his wife in California. Doc. 7-1 at 9–10; Doc. 13-1, Second Suazo Decl. at ¶¶ 2–3, 11. His wife suffers from fibromyalgia, psoriasis, and high blood pressure. *See id.*; Doc. 7-3, Suazo Decl. at ¶¶ 1–3; Doc. 13-1, Second Suazo Decl. at ¶¶ 12–14. Petitioner is her sole caretaker, and she relies on him to administer her medicine and assist her with daily tasks. Doc. 7-3, Suazo Decl. at ¶¶ 1–3; Doc. 13-1, Second Suazo Decl. at ¶¶ 9–14. He also financially supported his wife. Doc. 7-1 at 8–10; Doc. 13-1, Second Suazo Decl. at ¶¶ 10.

The government's records indicate that petitioner has not been arrested or charged with any crime since his release by immigration authorities in September 2024. Doc. 11-1, Ex. 5. Petitioner pursued relief in his removal proceedings by filing an application for asylum and withholding of removal under the Convention Against Torture. Doc. 2 at ¶ 42.

Upon being released by immigration officials in September 2024, petitioner was placed in the Alternatives to Detention Program. Doc. 2 at ¶ 11; Doc. 11-1, Martinez Decl. at ¶ 10. He was

1  initially required to wear a tracker in the form of a watch. Doc. 2 at ¶ 44; Doc. 13-1, Second
2  Suazo Decl. at ¶ 4. Later that year, immigration officials removed the watch and required
3  petitioner to check in periodically through a phone application. Doc. 2 at ¶ 44; Doc. 13-1, Second
4  Suazo Decl. at ¶ 5. Respondents assert that petitioner missed three check-in appointments
5  through the application: on January 25, 2025, April 28, 2025, and August 11, 2025. Doc. 11-1,
6  Martinez Decl. at ¶ 10. Petitioner indicates that he completed all virtual and in-person check ins,
7  but that, during some attempts to check in, the phone application did not work properly and he
8  completed the check-in late. Doc. 2 at ¶ 44; Doc. 13-1, Second Suazo Decl. at ¶¶ 6–7. After his
9  last attempt to check in, he was instructed to appear at the San Francisco ICE office in person.
10 Doc. 2 at ¶ 44; Doc. 13-1, Second Suazo Decl. at ¶ 8.

11       On September 9, 2025, petitioner appeared at the San Francisco ICE office as instructed,
12 and ICE agents arrested him. Doc. 2 at ¶ 45; Doc. 11-1, Martinez Decl. at ¶ 11. Petitioner's
13 attorney asserts that a deportation officer told her that petitioner was being arrested for three
14 check-in violations that involved checking in but doing so after the allotted time. Doc. 2 at ¶ 45.
15 ICE transferred petitioner to Mesa Verde ICE Processing Center, a detention center in
16 Bakersfield, California. *Id.* ¶ 46; Doc. 11-1, Martinez Decl. at ¶ 11.

17  **II.     Procedural History**

18       Petitioner filed a petition for writ of habeas corpus on September 15, 2025, Doc. 2, and a
19 motion for temporary restraining order on September 17, 2025, Doc. 7, arguing that he was
20 entitled to a pre-deprivation bond hearing under the Due Process Clause and that the Court should
21 order his immediate release pending any such hearing. Respondents filed an opposition, Doc. 11,
22 and petitioner filed a reply, Doc. 13.

23       On October 3, 2025, the Court granted petitioner's motion for temporary restraining order,
24 ordered respondents to release petitioner, and enjoined respondents from re-detaining him unless
25 they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a
26 neutral decisionmaker, that petitioner is a flight risk or danger to the community. Doc. 14.
27 Petitioner was released pursuant to the Court's order on October 3, 2025, at 5:45 p.m. Doc. 15 at
28 1. The Court also ordered respondents to show cause why a preliminary injunction should not

issue. Doc. 14.

On October 8, 2025, respondents filed a motion to dismiss. Doc. 15. In that motion, respondents informed the Court that, on October 1, 2025—two days before the Court's order was entered—petitioner had appeared for a master calendar hearing before an immigration judge, consented to his removal to Honduras, withdrew his application for asylum and withholding of removal with prejudice, and waived his right to appeal the immigration judge's removal order.[1] *Id.* at 1–2; Doc. 15, Ex. 1. The immigration judge issued a final order of removal. Doc. 15, Ex. 1. In their motion to dismiss, respondents argue that the habeas petition is moot because petitioner has been released and a final removal order was issued.[2] Doc. 14 at 2–4.

Petitioner filed an opposition to the motion to dismiss, arguing that the case is not moot as he intends to file a motion to reopen his removal proceedings under 8 C.F.R. § 1003.23(c). Doc. 17. Petitioner's attached declaration explains that he consented to his removal because he was misinformed, prevented from speaking with his habeas attorneys due to technological issues at Mesa Verde, and under immense pressure to forfeit his asylum case and escape the conditions at Mesa Verde. *See* Doc. 17-1, Matute Decl. Petitioner indicates that Mesa Verde detainees have limited access to technology that they can use to communicate with people outside the facility, and that when he was able to use the technology at the facility, his calls to his habeas attorneys would not go through. *Id.* ¶ 10. He was unable to speak with his habeas attorneys prior to his master calendar hearing to seek their advice or to ask about updates on his habeas case. *Id.* Petitioner's wife sought a consultation with another attorney and advice about how petitioner should proceed at the master calendar hearing, and that attorney told her that petitioner had no chance at prevailing on his asylum application and that petitioner would remain in detention—possibly for many months or years—until his asylum application was denied. *Id.* ¶ 12. The attorney told petitioner's wife that petitioner should agree to be deported, and that petitioner's

---

[1] Neither party informed the Court that petitioner had consented to his removal prior to the entry of the Court's order granting petitioner's motion for temporary restraining order.

[2] Respondents did not otherwise respond to the order to show cause why a preliminary injunction should not issue.

1  wife should not waste her money pursuing a meritless case.  *Id.*

2  Following the consultation with that attorney, petitioner explained that he and his wife
3  were distraught.  *Id.*  Petitioner indicates that due to the difficult circumstances he faced in
4  custody, and mis-advice from the other attorney, he consented to removal at the master calendar
5  hearing on October 1, 2025.  *Id.* ¶ 16.  Following his release from detention on October 3, 2025,
6  petitioner was able to contact his habeas attorneys and explain what happened.  *Id.* ¶ 18.  His
7  habeas attorneys have agreed to help him move to reopen his asylum case.  *Id.*  Petitioner's
8  attorneys represent in their moving papers that they intend to file a motion to reopen his removal
9  proceedings under 8 C.F.R. § 1003.23(c).  Doc. 17 at 5.

10  The Court held a hearing on the order to show cause and respondent's motion to dismiss
11  on October 17, 2025.  Doc. 19.  At the hearing, the Court extended the temporary restraining
12  order in effect pending the parties' submission of proposed language for this Order.  *Id.*  The
13  parties met and conferred regarding that proposed language and reached agreement as to all but
14  one sentence of the proposed order language.  The parties filed separate versions of the proposed
15  order language.  *See* Docs. 20, 21.

16  **III.    Motion to Dismiss**

17  Respondents move to dismiss the habeas petition on mootness grounds.  Doc. 15.
18  "Mootness has been described as 'the doctrine of standing set in a time frame: The requisite
19  personal interest that must exist at the commencement of the litigation (standing) must continue
20  throughout its existence (mootness).'"  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68,
21  117 S. Ct. 1055, 1069, 137 L. Ed. 2d 170 (1997) (quoting *United States Parole Comm'n v.*
22  *Geraghty,* 445 U.S. 388, 397 (1980)).  "A claim is moot if it has lost its character as a present,
23  live controversy."  *Rosemere v. Neighborhood Ass'n v. U.S. Environmental Protection Agency*,
24  581 F. 3d 1169, 1172 (9th Cir. 2009) (citations omitted).

25  "A habeas petition challenging" incarceration or detention "is never moot simply because,
26  subsequent to its filing, the petitioner has been released from custody."  *Abdala v. I.N.S.*, 488 F.3d
27  1061, 1064 (9th Cir. 2007) (citations omitted).  "For a habeas petition to continue to present a live
28  controversy after the petitioner's release or deportation, . . . there must be some remaining

5

'collateral consequence' that may be redressed by success on the petition." *Id.* (quoting *Spencer v. Kemna,* 523 U.S. 1, 7 (1998)). The collateral consequences must "be specifically identified," and "only concrete disadvantages or disabilities that [have] in fact occurred, that [are] imminently threatened, or that [are] imposed as a matter of law" are sufficient. *Spencer*, 523 U.S. at 8.

Petitioner challenges the legality of the detention from which he was released *and* his future re-detention, as both violate the Due Process Clause if he is not provided a hearing where the government must prove that he is a flight risk or danger. *See* Doc. 1. Respondents clearly signaled in their moving papers and at the hearing that they seek to re-detain petitioner if the Court dismisses the case, *see* Doc. 18 at 3–4, and that is a collateral consequence that keeps this case live. Respondents' stated intent to re-detain petitioner if his petition is dismissed confirms that petitioner's claim, which asserts that the Due Process Clause bars his re-detention without a bond hearing, is not moot.

Respondents rely primarily on *Abdala v. I.N.S.*, 488 F.3d 1061 (9th Cir. 2007), which is distinguishable. In *Abdala*, the petitioner "challenged the length of his pre-deportation detainment" and sought release from custody. *Id.* at 1062. But "[s]hortly after filing [his] petition, [the petitioner] was deported." *Id.* The petitioner's deportation "cur[ed] his complaints about the length of his INS detention[,]" and he "assert[ed] no collateral consequences of deportation that his original petition could have redressed." *Id.* at 1065. The petitioner in that case did not risk being re-detained pending further immigration proceedings because he had already been deported. *See id.* That is not the case here.

Respondents also argue in their reply that, because the statutory detention authority has shifted from 8 U.S.C. § 1226 to 8 U.S.C. § 1231, the "factual predicates on which this Court based its order have now changed [and] the liberty interest originally found to exist by this Court has . . been extinguished by operation of the final order of removal . . . ." Doc. 18 at 4. Respondents note that, because there is a final order of removal in place, the "government must now remove [p]etitioner within 90 days, known as the removal period." *Id.* at 3 (citing 8 U.S.C. § 1231(a)(1)(A)). "During the removal period, detention is required by the statute . . . ." *Id.* at 4. As addressed above, this change in the applicable statutory authority does not render moot

petitioner's due process claim. Additionally, petitioner's intended motion to reopen his removal proceedings, if successful, would shift the statutory detention authority back to 8 U.S.C. § 1226.

For the reasons set forth above, respondents' motion to dismiss is denied without prejudice.[3]

### IV.     Extension of the Temporary Restraining Order

The unique posture of this case warrants continuing the temporary restraining order in effect for good cause for a period of three months. In the prior order, the Court found that, due to his conditional release by immigration authorities in 2024 pending his removal proceedings, petitioner had a protected liberty interest and the Due Process Clause required that he be afforded a hearing prior to being re-detained. *See* Doc. 14. Respondents likely violated that right when they detained petitioner on September 9, 2025, and petitioner has satisfied the grounds for a temporary restraining order.[4] *Id.* While a final order of removal is now in effect, petitioner has credibly stated his intent to reopen his removal proceedings, and the basis on which he intends to do so. Given these circumstances, the Court finds that an extension of the temporary restraining order for three months is warranted, but this Order shall not prevent respondents from executing the final removal order while that removal order remains in effect. Following the hearing on October 17, 2025, the parties submitted joint language for the proposed order extending the temporary restraining order for three months, but did not agree as to one sentence of ¶ 2(b) of the Order below. *See* Docs. 20, 21. This Order largely adopts respondents' proposed version of that sentence but also includes a 10-day notice requirement as noted below.

### V.     Conclusion and Order

Based upon the foregoing,

1. Respondents' motion to dismiss, Doc. 15, is DENIED.
2. The Temporary Restraining Order of this Court, dated October 3, 2025, will remain in

---

[3] If petitioner's anticipated attempt to reopen his removal proceedings is unsuccessful and the final order of removal remains in effect, respondents may renew their motion to dismiss.

[4] The Court incorporates by reference its reasoning in the October 3, 2025 order. *See* Doc. 14.

7

effect for three months from the date of this Order as follows:

    a. Respondents are enjoined and restrained from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

    b. This Order, however, does not prevent Respondents from executing the final order of removal of Petitioner issued by an immigration judge on October 1, 2025. This Order further does not extend to prevent Respondents from requiring Petitioner to self-surrender to Respondents' custody, or from taking Petitioner into custody if he fails to timely self-surrender on ten (10) days' notice, for the purposes of executing Petitioner's prompt physical removal from the United States.

    c. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.

3. The parties shall appear before the Court for a status conference on January 19, 2026, at 1:30 p.m. The parties shall file a joint status report by January 12, 2026.

IT IS SO ORDERED.

Dated:  October 24, 2025

UNITED STATES DISTRICT JUDGE